UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

| | |
|---|---|
| RICO MENEFEE, | Case No. 2:23-cv-10024 |
| *Plaintiff,* | Matthew F. Leitman<br>United States District Judge |
| v. | |
| MICHIGAN DEPARTMENT OF CORRECTIONS, KRISTIN MASON, DIANE CANTERBURY-MILLER, KRISTEN BROWN, AMBER PARKER, ALLISON LOPEMAN, JOSH ALLEN, and BARBARA ROSE, | Patricia T. Morris<br>United States Magistrate Judge |
| *Defendants.* | |

## REPORT AND RECOMMENDATION ON DEFENDANT AMBER PARKER, N.P.'S MOTION FOR SUMMARY JUDGMENT (ECF No. 51)

### I. RECOMMENDATION

For the following reasons, **I RECOMMEND** that this Court **DENY** Amber Parker, N.P.'s motion for summary judgment (ECF No. 51).

### II. REPORT

#### A. Introduction

Plaintiff Rico Menefee, a prisoner in the custody of the Michigan Department of Corrections, filed a civil rights complaint pursuant to 42 U.S.C. § 1983 against several defendants alleging violation of his First, Eighth, and Fourteenth

1

Amendment rights. (ECF No. 1). Specifically his claims include allegations of deliberate indifference to a serious medical need, retaliation, denial of access to courts, and discrimination in violation of the Equal Protection Clause. (*Id.*). He also alleges violation of his rights under the Americans with Disabilities Act. (*Id.*). The Court *sua sponte* dismissed Plaintiff's equal protection claim along with several defendants in the case. (ECF No. 9, PageID.68).

On February 22, 2024, Defendant Parker filed a motion for summary judgment based solely on Plaintiff's failure to exhaust administrative remedies. (ECF No. 51). The motion is fully briefed and ready to be adjudicated. (ECF Nos. 60, 62).

### B. Factual Background

From 2019 to January 4, 2023, Plaintiff allegedly experienced a number of violations while housed at the Cooper Street Correctional Facility in Jackson, Michigan. (ECF No. 1, PageID.2).

Defendant Kristin Mason, Health Care Manager ("HUM"), denied Plaintiff the opportunity to see a medical specialist to address issues with his feet, and refused to honor his medical orders for prescription shoes which were issued in 2003. (*Id.* at PageID.5). Plaintiff alleges that these actions violated his Eighth Amendment right to be free from cruel and unusual punishment, and the Fourteenth Amendment Equal Protection Clause. (*Id.*).

In July 2021, Plaintiff scheduled a healthcare visit to address injuries he suffered following a slip-and-fall accident. (*Id.* at PageID.6). During the visit, Plaintiff alleges Defendant Canterbury-Miller examined his knee and indicated it appeared "normal." (*Id.*). When he requested to have another nurse review his injury, Defendant Canterbury-Miller yelled at Plaintiff that he could not see another nurse, and threatened to write a ticket against him for "insolence." (*Id.*). He was rescheduled for another healthcare visit in August, but the unit refused to see him and later lied that he did not appear for the visit. (*Id.*).

In March 2022, Plaintiff was examined by an off-site doctor, and underwent medical examinations which revealed Plaintiff would require "a walking cane to help take some of the weight off [his] knee and pressure off the heel . . . and to alleviate further damage to [his] ankle. . . ." (*Id.* at PageID.7). On October 30, 2022, Plaintiff was called to the healthcare unit by Defendant Canterbury-Miller for an unplanned visit and proceeded to interrogate him regarding his walking cane. (*Id.*).

Less than a week later, Defendant Brown, at the behest of Defendant Canterbury-Miller, took Plaintiff's walking cane. (*Id.* at PageID.8). During the incident, Plaintiff alleges Defendant Brown "snatched' the cane away from him, refused to advise as to who offered the cane taken, became "loud and belligerent," and ultimately "violently pulled the door [Plaintiff was holding onto]on [his] leg and feet as to shove [him] out of the way." (*Id.*). He asked another individual in

3

attendance for Defendant Brown's name but was told that "her name was nurse Louis," which is the name he included on his grievance. (*Id.*). Plaintiff alleges that these actions violated his Eighth Amendment right to be free from cruel and unusual punishment, and the Fourteenth Amendment Equal Protection Clause. (*Id.*).

On December 14, 2022, Plaintiff alleges Defendant Parker aided and abetted Defendants Canterbury-Miller and Brown "to cover up" their actions of removing his walking cane without prior authorization from himself or the doctor who order his walking cane. (*Id.* at PageID.9). She also refused to "address most of [his] medical concerns such as [his] knee surgery; diabetes; feet; stomach; and all of his medical issues." (*Id.*). Plaintiff also alleges that as a form of retaliation the healthcare staff would refuse to order his diabetes medication for extended periods of time. (*Id.*). Plaintiff alleges that these actions violated his Eighth Amendment right to be free from cruel and unusual punishment and the Fourteenth Amendment Equal Protection Clause. (*Id.*).

Defendant Lopeman refused to reinstate Plaintiff's therapeutic diabetic diet despite his requests and explanation as to why he needed it. (*Id.* at PageID.11). This failure was leading to Plaintiff's blood sugar level becoming raised and causing hyperglycemia. (*Id.*). Plaintiff alleges that these actions violated his Eighth Amendment right to be free from cruel and unusual punishment, the Fourteenth Amendment Equal Protection Clause, and the American with Disabilities Act. (*Id.*).

Defendant Rose refused to provide Plaintiff with requested copies of court documents, and when Plaintiff questioned her authority to do so, she had him removed from the library, and subsequently barred. (*Id.* at PageID.12–13, 18). Plaintiff alleges that these actions violated his First Amendment right to access to the courts, and the Fourteenth Amendment Equal Protection Clause. (*Id.* at PageID.13).

Plaintiff is seeking nominal, compensatory, and punitive damages, along with declaratory judgment. (*Id.* at PageID.25).

### C. Standard of Review

Summary judgment is appropriate where the moving party "shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). A material fact is one that would affect "the outcome of the suit under the governing law. . . ." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). The Court's role at summary judgment is not "to weigh the evidence and determine the truth of the matter but to determine whether there . . . are any genuine factual issues that properly can be resolved only by a finder of fact . . . ." *Id.* at 249–50, 255. Accordingly, "the evidence, all facts, and any inferences that may be drawn from the facts" must be viewed "in the light most favorable to the nonmoving party." *Pure Tech Sys., Inc. v. Mt. Hawley Ins. Co.*, 95 F. App'x 132, 135 (6th Cir. 2004).

The non-moving party cannot merely rest on the pleadings in response to a motion for summary judgment. *Anderson v. Liberty Lobby*, 477 U.S. 242, 248 (1986). Instead, the non-moving party has an obligation to present "significant probative evidence" to show that "there is [more than] some metaphysical doubt as to the material facts." *Moore v. Philip Morris Cos.*, 8 F.3d 335, 339–40 (6th Cir. 1993). The non-movant cannot withhold evidence until trial or rely on speculative possibilities that material issues of fact will appear later. 10B Charles Alan Wright & Arthur R. Miller, Federal Practice and Procedure § 2739 (3d ed. 1998). "[T]o withstand a properly supported motion for summary judgment, the non-moving party must identify specific facts and affirmative evidence that contradict those offered by the moving party." *Cosmas v. Am. Express Centurion Bank*, 757 F. Supp. 2d 489, 492 (D.N.J. 2010). In doing so, the non-moving party cannot simply assert that the other side's evidence lacks credibility. *Id.* at 493. And while a pro se party's arguments are entitled to liberal construction, "this liberal standard does not . . . 'relieve [the party] of his duty to meet the requirements necessary to defeat a motion for summary judgment.'" *Veloz v. New York*, 339 F. Supp. 2d 505, 513 (S.D.N.Y. 2004) (quoting *Jorgensen v. Epic/Sony Records*, 351 F.3d 46, 50 (2d Cir. 2003)). "[A] pro se party's 'bald assertion,' completely unsupported by evidence is not sufficient to overcome a motion for summary judgment." *Lee v. Coughlin*, 902 F.

Supp. 424, 429 (S.D.N.Y. 1995) (quoting *Carey v. Crescenzi*, 923 F.2d 18, 21 (2d Cir. 1991)).

**D. Analysis**

Defendant Parker contends that Plaintiff failed to exhaust his administrative remedies. (ECF No. 51, PageID.211). First, as to Grievance 0933, Defendant Parker contends it "has nothing to do with the allegations Plaintiff stated against Defendant [Parker] in his Complaint" because it predates the December 14, 2022 incident. (*Id.* at PageID.213). Second, Grievance 1017 does not exhaust Plaintiff's claims against Defendant Parker as the facts contained within the grievance were insufficient to put her on notice. (*Id.* at PageID.214). Even if Plaintiff's grievance was adequate to provide notice, he preemptively filed his lawsuit "*before* his administrative remedies were fully exhausted." (*Id.* at PageID.215).

Under the Prison Litigation Reform Act ("PLRA") of 1996, specifically 42 U.S.C. 1997e(a), "[n]o action shall be brought with respect to prison conditions under § 1983 . . . by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted." The exhaustion requirement is mandatory and applies to all suits regarding prison conditions, regardless of the nature of the wrong or the type of relief sought. *Porter v. Nussle*, 534 U.S. 516 (2002); *Booth v. Churner*, 532 U.S. 731, 741 (2001). Furthermore, "exhaustion" under the PLRA means "proper exhaustion." *Woodford*

*v. Ngo*, 548 U.S. 81, 92 (2006).  In *Woodford*, the Supreme Court defined "proper exhaustion" as requiring "compliance with an agency's deadlines and other critical procedural rules . . . ."  *Woodford*, 548 U.S. at 90.  One reason for creating prisoner grievance procedures under the PLRA was to create an administrative record for the court.

> Requiring exhaustion allows prison officials an opportunity to resolve disputes concerning the exercise of their responsibilities before being haled into court.  This has the potential to reduce the number of inmate suits, and also to improve the quality of suits that are filed by producing a useful administrative record.

*Jones v. Bock*, 549 U.S. 199, 204 (2007).  In order to properly exhaust administrative remedies, prisoners must complete the administrative review process in accordance with the deadlines and other applicable procedural rules.  *Id.* at 218; *Woodford v. Ngo*, 548 U.S. 81, 90–91 (2006).  "Compliance with prison grievance procedure, therefore, is all that is required by the PLRA to 'properly exhaust.'"  *Jones*, 549 U.S. at 218.

MDOC Policy Directive ("P.D.") 03.02.130, effective March 18, 2019, prescribes the three-step administrative exhaustion process for grievable matters.  At Step I, a prisoner must "attempt to resolve the issue **with the staff member** involved within two business days" and, if unsuccessful, must file a grievance within five business days.  (ECF No. 51-1, PageID.279, ¶ Q).  To be properly exhausted, a defendant must be named at Step I.  MDOC P.D. 03.02.130, ¶ S provides:

8

> The issues should be stated briefly but concisely. Information provided is to be limited to the <u>facts</u> involving the issue being grieved (i.e., **who**, what, when, where, why, how). Dates, times, places, and **names of all those involved in the issue being grieved are to be included**.

(*Id.* at PageID.279) (underscore in original) (bold emphasis added).

Defendant Parker contends Grievance JCS-22-12-1017-12Z ("Grievance 1017") does not exhaust Plaintiff's claims against her as the facts contained within the grievance were insufficient to put her on notice. (ECF No. 51, PageID.214). And even if Plaintiff's grievance was adequate to provide notice, he preemptively filed his lawsuit "*before* his administrative remedies were fully exhausted." (*Id.* at PageID.215). While convoluted, the crux of Plaintiff's response is that the Court's April 26, 2023 Opinion and Order screening Plaintiff's complaint prohibits granting a defendant's summary judgment motion, and the Court's prior ruling should not apply as it involved "different defendants with different titles . . . ." (ECF No.60, PageID.338).

The main factual allegation lodged against Defendant Parker in Plaintiff's complaint is that on December 14, 2022, she aided and abetted Defendants Canterbury-Miller and Brown "to cover up" their actions of removing his walking cane without prior authorization from himself or the doctor who ordered his walking cane. (ECF No. 1, PageID.9). Based on the complaint, Plaintiff alleges Defendant Parker's earliest involvement, resulting in the violation of his constitutional rights,

9

took place on December 14, 2022. (*Id.*). Thus, his Step One grievance associated with this violation would have been filed on or after December 14, 2022. The MDOC Prisoner Step III Grievance Report proffered by Defendant Parker shows that Plaintiff filed two grievances between December 15, 2022 and December 21, 2022 – JCS-22-12-1017-12Z and JCS-22-12-1030-28E. (ECF No. 51-1, PageID.221–22).

Grievance JCS-22-12-1030-28E involved an incident which took place in October 2022 where Plaintiff did not receive the appropriate dosage of medication for his diabetes. (*Id.* at PageID.258). The grievance was not filed until December 21, 2022, which violates MDOC P.D. 03.02.130, ¶ W requiring that a Step I grievance be filed within five business days of a party attempting to resolve a grievable issue with staff. (*Id.* at PageID.259–60, 280). More importantly, the grievance does not name Defendant Parker or involve any of the alleged inappropriate conduct Plaintiff claims Defendant Parker engaged in. For a court to find that a prisoner has administratively exhausted a claim against an individual defendant, a prisoner must have alleged mistreatment or misconduct on the part of the defendant at Step I of the grievance process." *Burton v. Jones*, 321 F.3d 569, 575 (6th Cir. 2003). Plaintiff's failure to identify Defendant Parker in his Step I, II, or III grievance precludes a finding of exhaustion. *Walker v. Greiner*, No. 21-12874, 2024 WL 1342683, at *1 (E.D. Mich. Mar. 28, 2024) (finding plaintiff failed

10

to properly exhaust his administrative remedies by not expressly naming a defendant in his grievance); *Smeltzer v. Hook*, 235 F. Supp. 2d 736, 740 (W.D. Mich. 2002). Moreover, the incident complained of predates the time at which Defendant Parker allegedly aided and abetted Defendants Canterbury-Miller and Brown in their "cover up." (*Id.* at PageID.258). Thus, the grievance cannot be said to satisfy the exhaustion requirement as to Defendant Parker.

I now turn to Grievance JCS-22-12-1017-12Z which was highlighted by Defendant Parker in her motion. Grievance JCS-22-12-1017-12Z, again, involved Plaintiff's inability to receive refills for his diabetes medication despite multiple requests submitted through the kite system on December 6, 12, and 14. (*Id.* at PageID.264). This grievance does not mention Defendant Parker, any alleged "cover-up," or the seizure of Plaintiff's walking cane. (*Id.*); *Walker*, 2024 WL 1342683 at *1; *Smeltzer*, 235 F. Supp. 2d at 740. Thus, this grievance cannot be said to satisfy the exhaustion requirement as to Defendant Parker.

That leaves Grievance JCS-22-11-0933-28i ("Grievance 0933"). (ECF No. 51-1, PageID.223, 271–75). Defendant Parker contends that Grievance 0933 "has nothing to do with the allegations Plaintiff stated against Defendant [Parker] in his Complaint" as the grievance predates the December 14, 2022 incident. (ECF No. 51, PageID.213). Grievance 0933 identified Defendant Parker by name, and stated that Plaintiff was notified by healthcare staff that "he or she order[ed] the removal

11

of [Plaintiff's] walking cane" although Plaintiff never met with said individual prior to the order being issued. (ECF No. 51-1, PageID.274). He went on to express that he believed the action was being taken as a form of racial discrimination and retaliation for Plaintiff filing "grievances [ . . . ] against food service and various staff members. . . ." (*Id.*).

While Grievance 0933 was filed in November 2022, approximately a month before the date identified in Plaintiff's complaint as to when Defendant Parker began aiding and abetting Defendants Canterbury-Miller and Brown "to cover up" their actions, it is possible Plaintiff merely included the wrong date in his complaint. Grievance 0933 not only identifies Defendant Parker but also alleges the improper removal of Plaintiff's cane which his complaint argues Defendant Parker aided and abetted Defendants Canterbury-Miller and Brown in covering up. Whether Plaintiff accidentally included wrong date in his complaint is a question of fact that should be addressed by the finder of fact.

Further, Plaintiff's allegation regarding Defendant Parker's involvement in the taking of his walking cane remained fairly consistent between Grievance 0933 and his complaint. The only significant difference is that in his complaint Plaintiff alleges Defendant Parker's actions occurred approximately one month after he filed his grievance. It is plausible that Defendant Parker's actions began in November 2022 and continued into December 2022, which would lead them to qualify as a

"continuing violation." *Morgan v. Trierweiler* addresses a situation similar to the issue at hand. 67 F. 4th 362 (6th Cir. 2023). In *Morgan*, plaintiff filed a single grievance regarding the continuous denial of Halal food but the period highlighted in the grievance focused on a six-day period. *Id.* at 369. The Court reasoned that "[r]aising the issue after every meal—or even every two to seven days—would be an unwarranted expectation given that the allegations were broader than a single meal." *Id.* at 371. The Court held that Morgan's grievance was sufficient to exhaust administrative remedies for the denial of religious meals although he did not file separate grievances after the denial of each individual meal. (*Id.*).

A similar issue is at hand. Plaintiff complains of the improper taking of his walking cane by Defendant Brown in November 2022, and identifies Defendant Parker, by name, in Grievance 0933 which was filed in November 2022. Plaintiff's subsequent appeals further underscore the possibility that this was "continuing violation" similar to that in *Morgan*. In his November 18, 2022, Step II appeal, Plaintiff contends that the "grievance is unresolved. . . ." (ECF No. 51-1, PageID.272). And in his Step III appeal, he again states the "grievance is unresolved for the same reasons stated." (*Id.*).

Further, the crux of Plaintiff's complaint in regard to his walking cane is that it was taken from him without the proper procedures being conducted beforehand. Although, his complaint identifies December 14, 2022 as the date when Defendant

13

Parker began aiding and abetting Defendants Canterbury-Miller and Brown, it is not far-fetched to believe that Plaintiff included the wrong date or that Defendant Parker's involvement began in November 2022, and Plaintiff merely elected to highlight the December 14, 2022 date in his complaint. Either scenario is plausible. But what is more definitive is Grievance 0933 provides Defendant Parker with sufficient notice as to the actions Plaintiff alleges she committed in violation of his constitutional rights. Thus, this grievance can be said to satisfy the exhaustion requirement as to Defendant Parker.

### E. Conclusion

For these reasons, **I RECOMMEND** that the Court **DENY** Defendant Parker's Motion for Summary Judgment based solely on exhaustion (ECF No. 51).

## III. REVIEW

Pursuant to Rule 72(b)(2) of the Federal Rules of Civil Procedure, "[w]ithin 14 days after being served with a copy of the recommended disposition, a party may serve and file specific written objections to the proposed findings and recommendations. A party may respond to another party's objections within 14 days after being served with a copy." Fed. R. Civ. P. 72(b)(2); *see also* 28 U.S.C. § 636(b)(1). Failure to file specific objections constitutes a waiver of any further right of appeal. *Thomas v. Arn*, 474 U.S. 140 (1985); *Howard v. Sec'y of Health & Human Servs.*, 932 F.2d 505 (6th Cir. 1991); *United States v. Walters*, 638 F.2d 947 (6th Cir.

1981). The parties are advised that making some objections, but failing to raise others, will not preserve all the objections a party may have to this R&R. *Willis v. Sec'y of Health & Human Servs.*, 931 F.2d 390, 401 (6th Cir. 1991); *Dakroub v. Detroit Fed'n of Teachers Local 231*, 829 F.2d 1370, 1373 (6th Cir. 1987). Pursuant to E.D. Mich. LR 72.1(d)(2), a copy of any objections is to be served upon this magistrate judge.

Any objections must be labeled as "Objection No. 1," "Objection No. 2," etc. Any objection must recite precisely the provision of this R&R to which it pertains. Not later than 14 days after service of an objection, the opposing party may file a concise response proportionate to the objections in length and complexity. Fed. R. Civ. P. 72(b)(2); E.D. Mich. LR 72.1(d). The response must specifically address each issue raised in the objections, in the same order, and labeled as "Response to Objection No. 1," "Response to Objection No. 2," etc. If the Court determines that any objections are without merit, it may rule without awaiting the response.

Date: June 17, 2024					S/ PATRICIA T. MORRIS
						Patricia T. Morris
						United States Magistrate Judge